Given its complexity and size and second visit here We You know, I always say we've read your briefs and the authority cited in your briefs and we've looked at portions of the record And that's all true for this case But it's um, it's been a more substantial undertaking than than ordinary So you have more time available to you? For that reason Don't treat the red light as aspirational. We've given you plenty of time of course, if you're still answering questions from us, you're feel free to To answer that question before you finish up and you'll save your time for rebuttal I don't think there's really anything else to say. Mr. Reg, will you come forward and and speak with us, please? Thank You good morning your honors Bruce Rich Counsel for appellants and thank you very much for affording us the time in this seemingly never ended ending case But one of great importance Your honors the fair use doctrine, which is the nub of this case and this appeal Really operates as a safety valve for occasional and I emphasize that word occasional borrowing of Where importantly that taking doesn't impair the marketability of the original work It's the exception to the copyright rule Which is that copyright owners as a rule are entitled to control their expression including the copying of that expression. It's a flexible statutory driven balancing test and as you understand and appreciate it's applied on a fact-specific basis the district court twice now has Misconstrued the essence of that doctrine the remand decision by the prior panel Instructed the court to treat the statutory factors the four factors flexibly. It wasn't arithmetic and mechanical while a judge Evans Abandoned the 25% 25% 25% as you've read she adopted other we would say arbitrary weightings Worst than arbitrary I would suggest because as I will get to the effect of her weightings was to perpetuate the second consequential error that the prior panel identified which was giving undo almost per se weight to the pedagogical purpose of the use here and as is clear the preamble to section 107 this court has said it in letter EC and Decided but when you look at the weights assigned by judge Evans to factors one, which was automatically given because of the educational use at 25% which by the way was unchanged and in that sense inflexibly unchanged from the 25% originally interestingly and 30% Awarded to factor three simple math tells you that's 55% You don't even need to look at third error Identified most importantly by the prior panel, which is undue Inappropriately little weight given to the single most dispositive issue involved in this case Repeatedly identified by the prior panel, which is what's the threat of market substitution? Given that it was conceded Conceded I have a question about that that factor. Yes so I've read the earlier panel opinion and that panel opinion said We find that the district courts analysis under the fourth factor was correct and that the district court properly took license availability into account and Determining whether the fourth factor waited for or against fair use the panel said Um Defendants use is Non-transformative and fulfills the educational purposes that plaintiffs at least in part market their works for but the threat of market substitution here is great and Thus the fourth factor looms large and the overall fair use analysis the panel said Because we find that the district court did not err in its application of the fourth factor however, because defendants copying was non-transformative Non-transformative and the threat of market substitution was therefore serious the district court erred by not affording the fact fourth factor additional weight and its overall fair use analysis and Then it says again With regard to the fourth factor the effect of defendants use on the market for the original the district court did not occur however, because defendants unpaid copying was Non-transformative and they use plaintiffs works for one of the purposes for which they are marked at the threat of market substitution Is severe, okay. I Thought on reading that that That what the district court had to do on remand Was give more weight to this factor, but not revisit its findings about this factor Am I rock right about that or wrong about you're completely right your honor and judge Evans failed to do that in several consequential ways Can I ask you a question about that though, please? Here's my concern what judge Evans did originally On the ones where it was three to one when she weighed them all equally was she looked through the first two Parts of the test if you will one was is there licensing availability and if there is licensing availability then How much? Would you all have been entitled to so for example on craft of inquiry? $14.89 and then She said well If everybody did it would that be a substantial would that have a substantial effect and The answer is yes, of course it is and so the problem is that and then she stopped she just stopped there She didn't go any further The problem is and I think the panel points out and actually uses the term circular that if that is the be-all and end-all of the market test then Just by making licenses available that factor will always Necessarily strongly favor in front of finding of infringement and the reason that that's the case is because even if it's only one cent Right if everybody did it it's always going to be a substantial amount so I feel like that can't possibly be the be-all and end-all of the test I guess I'd like you to address that to see first of all whether you agree that that is the be-all and end-all of The test and second, if not, what else should be considered? There's a lot packed into both of your honors questions. Let me guess. Please take them one at a time Let me try to systematically unless it's less We might start with should the district court and you can consider it in the light of what judge Rosenbaum said should have revisited its findings about the fourth factor No separate and apart from whether it should have given them more weight Your honor as we read the panel decision at page 99 to 100 and then at page 103 to judge Rosenbaum's parsing in part The judges said that the district court committed no error in Concluding that where licenses were available for 31 of the works in 2009 factor for quote strongly favored Plaintiffs and the period end of sentence It said it found no error with that analysis in the context of this case, but can you answer my question? which is in those cases in the ones where where the district court found three to one and the one was The fourth factor on the initial analysis the first time around all the district court did was look to see whether there was licensing availability, and if so, then it found that there was You know substantial infringement basically, or you know hot that it favored infringing and So you would never have to look at anything else I mean you are in agreement that that's all the district court did in those cases first of all and second of all Is that? Is there something wrong with that? Like it cannot possibly be the case that that's always going to favor strongly a Finding of infringement just by virtue of the fact that there is licensing available no, and that's why there's a very full trial record here your honor, which the Prior panel acknowledged we have the let's be clear about the context in which this has occurred This is not a situation the plaintiffs publishers did not bring this case Because of a one-off taking of a chapter by a single professor for a single course for a single term Let alone a paragraph taking which is sort of a caricature of our case by the other side quite distinctly this case was brought because of a multi-year pattern of Significant chapter long and longer takings which is the fact record and I don't mean to suggest Otherwise that that you know, this isn't a serious problem or anything of that nature, but I am concerned about What we say about the fourth factor and how it applies and so far. I haven't heard you address whether there's something more to the test then there is a licensing availability and Since there's a licensing availability and you all would be entitled to some kind of money on that and necessarily it strongly favors infringing I just don't see how that can possibly be the answer. Well, so that's what I'm asking you Your honor we have extraordinarily importantly a conclusion on factor one conceded No transformative use so we have by definition here the significant threat of market substitutes But can you please address factor for? that weighs directly on Factor for market harm your honor factors one and four interplay with each other precise on the panel Which is why the panel opinion said because it's non Transformative the threat of market substitution is severe precisely So in that circumstance your honor where there is a readily functioning permissions market Like CCC as the Texaco case concluded as the Princeton case concluded you don't have the circularity Problem where it is where there is a definable existing let alone likely reasonably likely to be developed market You don't have a theoretical Right to license absent you have an established permissions market stipulated facts if I may your honor stipulated facts in the record That the CCC permissions market is well established and well functioning that the plaintiffs rely on permissions income Actually for the viability of specific works for their profitability So you have actual actual prospect of market harm, which takes us well beyond the governing standard of Harper which is some reasonable likelihood of future harm of Some prospect of future harm of any part of a normal market in the words It's part of the problem here as I understand it is when you're looking at this market substitution Inquiry is that you're having to consider you're having to speculate about a future market right And and you can't evaluate that in total By what has happened in the past and your honor if I may emphasize that and judge Rosenbaum I don't mean to run from you by any means. I'm trying to be responsive to a series of questions But this is this is critically important to this case and the context which is if I may take a simple analogy I spend a lot of my life Litigating in the music field as well And if somebody were to say to the record companies back a decade ago at the time people were still buying CDs Oh, don't worry about Streaming of musical works. There's no market for that. It's a nascent market show me today how you're being harmed in your CD sales Totally different the creative quality involved with that is completely different from a lot of the works that are at issue here where Although obviously it involves additional work Besides just putting facts and the creative quality is not to the extreme that you have in completely original works That you would have in the record industry, but that's one of the factors my point You're on except it would have no weight whatsoever the way you've described it because the mere fact that it's a non transformative use and That you have licensing availability wouldn't necessarily mean that there's a finding of infringement I just don't I think you also have to consider and the court said in the next section That there were a couple other factors that the district court had broken out That had to be considered in the context of the other factors and those are that limited unpaid copying of excerpts will not deter academic authors from creating new academic works and The slight limitation of permissions income caused by the fair use authorized by disorder will not appreciably diminish the plaintiff's ability To publish scholarly works and will promote the spread of knowledge. I'm not necessarily saying which way it should come out I'm just concerned that if all we look at is non transformative use is you're Suggesting now and the fact that there's licensing availability That is a problem that cannot possibly be the answer either because then it completely devalues The other two factors, but your honor what we're saying is and it's the district courts job in any given case and your honors job with respect to take the cases on The fact records as you find them. This is a case of systematic use of multiple takings of stringing together these excerpts of demonstrated stipulated stipulated market harm with respect to those takings in a market Which is now frozen in o9, but where the president of Oxford University Press even then testified That use rather than sales was the new marketplace emerging That Oxford and Cambridge and sage were creating new products to meet that new market demand Just to establish a test Which is a snapshot of current harm putting blinders on to the evolution Which was the only reason I was using the music analogy or on or not for creativity relatively Would be in essence to say It's a complete disincentive For content owners to move into those new markets the horse is out of the barn under judge Evans Conception of market harm before you can stop it because you can't measure by definition That's somewhat speculative potential market, but where you have in place established license mechanisms in-house and through CCC where you have these very appellants Using those permissions processes receiving millions of dollars today To license their works where you have a market that it's stipulated has moved from paper course packs Where Georgia State made the permissions payments to electronic? Copying simply and expressly to save money that was found as a fact by judge Evans that was found by judge Vincent to be a dispositive fact in his reading of the record at least and Administrator of course packs at GSU say as much here's the administration saying to students you can save money Don't make permissions payments By buying course packs download them print them bring them to class Same difference all of that your honor with respect is the record context in which we argue that at a minimum whereas to those 31 works Where digital license availability was present and we think that was a too narrow reading of the law as is at a bare minimum in That situation where the threat of market substitution booms so heavy The balance should be kept Consequentially in favor of factor for over the non dispositive Educational use what's worse and I think your honor judge prior you were getting to this in the beginning if you analyze work by work Not withstanding that at pages 99 and 100 and 103 of the prior panel opinion the Ninth Circuit said you've got it Right on factor for your honor She changed her analysis and the bottom line in no fewer than 25 cases in 25 of the 31 cases where in her prior opinion she found factor for strongly favoring plaintiffs based on this balance sheet type analysis the judge engaged in Looking Microscopically at what the earnings were per work in the current market Calibrating those against sales. She said favors fair use She flipped 25 times, even though the prior panel said you got it exactly right. You didn't give it enough weight So instead of giving it enough weight I mean six cases that she end up in the entire record finding the factor for a bunch of Findings on factor for on the first go-round of strongly infringing works one through what? 18 17 all of which then on On remand end up fair with four exceptions being infringing but not strongly infringing We're frankly puzzled how that comports with the direction of the prior panel to give extra weight to fact the paragraph That says we find the district courts analysis under the fourth factor was correct and the district court properly took license availability Into account in determining whether the fourth factor waited for or against fair use comes in this Opinion right after the court addresses the fact that you all were Were concerned that the district court in cases where there was no licensing availability Found that there was no market and that that factor weighed in favor of Fair use and so the very first paragraph the very first sentence the topic sentence of the paragraph That I just read you the last line of says in its individual analysis under the fourth factor of each of the 48 works For which it found plaintiffs and made a prima facie case of infringement The district court performed a sufficiently nuanced review of the evidence regarding license availability in other words when the district court Found that if there's no market at all, if there's no licensing availability at all Then there's no market It was correct in that respect and that its handling of the licensing availability Aspect of the fourth factor was correct But as I read it It's not saying that it was limited to considering the licensing availability in the fourth factor because if it were the rest of this whole six page discussion about The fourth factor would have no relevance. I mean it would make no sense Well, well your honor we I always hesitate to interpret what three other people, you know meant in their writings And I understand your point of view. I I do believe that That that section of the opinion 99 through 103 in particular is Reasonably straightforward while in our briefing and throughout our position We disagreed with the first prong of that which is that you must have we must have shown Digital license availability. There's both a fact dispute because as you know, we believe in jx5 and the testimony It could not have been clearer, but that was ruled against us. So that was 17 of the works For the moment I'm focusing at a minimum though on the remaining 31 where I believe it's pretty plain from Two sections of the opinion as I interpret it Anyway that the court said you got it, right judge Evans as to that circumstance and where we have No circularity because CCC is well established functions. Well Where it's got licensed programs that operate where judge Evans herself said in a matter of minutes GSU could have installed the necessary software click the button as it were and gotten these permissions. So it's all lubricated It's all there and available which works are we talking about talking about now the except 31 works for the moment your honor Okay, 31 where there is license availability. I at least construe and you're obvious that would be 1 through 17 For example, what would be in the 31? I your honor. I don't have there were so many moving craft of inquiry Handbook of feminist research and book of social theory all of those. Yes, exactly, right to say certainly the sage works Just to finish the thought we certainly construe it as saying you got it right as to those now the court did go on in One sentence page 100 I think saying in close cases The district court also did not err in looking further But if you look at the record of the first district court opinion That was seven cases where the court found a quote tie a two to two tie in her mind So in those limited quote close cases, she went further yeah, but but the problem is then the court then we told her, you know, go go back and reweight this and Do all these other things and so when? She did that the original time everything was worth one She didn't go into any further detail on the fourth factor when it was three to one because it made no difference There was no reason for her to go into to go past the licensing Aspect of it the licensing availability Because even if it weighed heavily in favor of finding an infringement It wouldn't have made any difference because the way she originally did it which was wrong. There were three of equal weight That weighed the other way So there was no reason for her to expend her time and go into that But when it came out two to two there was well when it went back and the weights were different then There came a necessity to go through and do the complete analysis on each of them That's how I construe what the problem with that is the problem and and I respect your reading of it Obviously and you're entitled to your reading and we we would read it differently But the larger problem with that candidly is that if that were the correct interpretation It would fall outside of all settled jurisprudence There is no other Copyright precedent of which we are aware and certainly none at the circuit level and certainly none at the Supreme Court level That has said you engage in this kind of microscopic examination taking a present-day snapshot of actual market harm and hypothesize from that experience alone What the future prospects of potential harm might be on an industry-wide basis? The record here makes clear even the amici American Library Association brief makes clear that GSU's practice being tested here is National a whole bunch of universities are disregarding permissions in this sphere So that they talk about circularity if I may it's circular to say Oh only $14.38 was generated in permissions fees from digital permissions when nobody is respecting in our view The copyright boundaries nationally let alone the fact that this whole practice is evolving People aren't consuming in print form any longer It was already beginning to be true in oh nine and I think you know from your daily experience It's accelerating greatly. None of that was factored in by the district court. There's no opinion respectfully that you will find certainly at any appellate court level That validates an approach saying unless you can prove that you couldn't stay in business today That you wouldn't keep publishing the work today That therefore you fail on market for harm is completely antithetical To the governing standard the governing standard is if that practice impairs any normal reasonable expected market And I would submit that in this galloping digital evolution of an economy there's never a better example where you've got to give latitude to the stipulated facts saying we are being hurt to the Testimony of our witnesses saying this is where the business is going to the fact that in course tax GSU respected the law and made the payments and suddenly because the format of copying is different they don't and Say no no no unless you can prove today That there's a meaningful disposition of your ability to continue publishing the very works Let alone the impact for the future We respectfully submit that I don't think the panel went that way certainly not as to works for which there were 31 works for which There was a showing of digital availability They affirmed that she was right the first time in saying this strongly favors the plaintiffs That's she went and made that a default rule instead Applied to all 31 works and flip 25 of mr. H Your time is expired, but I'm going given the number of questions you were asked and the length of them I'm going to give you some more time, and I suspect my colleague to my right Who hasn't even had an opportunity to ask questions might have some thank you. Okay. Thank you Yes So as I you know I would have preferred to have been on the first panel in this Be sure that we give appropriate deference to what they said And I think they're they're different ways to read that so as I understand your view and and maybe just priors view is in the the first trial she assigned a 25% value to the fourth factor and in most cases Found strongly infringing although although by her waiting it didn't matter right so we know that she had to give it a Different weight when it went on remand she did that but in your view as I understand it she Had to take the strongly infringing Finding and just expand it from 25% to something you're not even happy with the 40% You know and I again, I'm simplifying everybody who see you but Without redoing the mix that resulted in the strongly infringing finding okay, I I Can see how you would read judge Jeff flats opinion to say oh well Yeah, by the way, you do have to redo the mix which could explain how she went from strongly infringing to fair use And and you seem to acknowledge that She had to redo the mix rather than just slide from 25 to 40 percent When you say the next year, what are you referring to? her findings The mix that leads to a finding in fourth in the fourth factor. I believe my About whether it's strongly infringing or whether it's fair use or whatever it might be so for example in your argument about Why she was wrong not to reopen the record I believe one of the things you say is well, she had to redo the mix on factor for anyway, so I I'm just trying to it which which was it. Did she have to? Re-evaluate the evidence in factor for or or not use I'm sorry, and it's understandable why in this record there could be a lot of confusion or perhaps a lack of clarity But I accept all of it. I mean you understand this case a lot Let me be clear about the reopening the record request that went specifically to these other 17 Work, it went I know that but what I want to I think you have a tougher road there, by the way Okay, thank you. Thank you But but the answer is no as to The 31 we certainly didn't suggest she had to re-evaluate her conclusion as to the works for which there was a value bill Availability that strongly favored the plaintiffs. That was one of the few areas with where I think she got it legally, correct What we said to her was you've got to give them far more weight According to all the passages judge prior read from the prior. She's a fourth factor now she did mathematically move it from 25, but only after Making a finding that what was before strongly infringing is now fair you she took it away And then gave fair use more weight She took it away your honor. It seems to us impossible to square the most important takeaway from the prior opinion Which is that this is directly? Substitutional this goes right to the heart of the market for which our clients Market their works the educational market. It's not transformative directly substitutional. It's impossible to square the repeat Instruction from the prior panel, which is give that the weight it's due the severe risk give it relatively great weight Those are the words of the panel. It's impossible to square that with a conclusion on factor four by the district judge That it favored the plaintiffs 31 times the first time and six times the second time it seems Impossible to square those outcomes forgetting how you then balance the entire mix and with respect to the entire mix if I may Yes, there are four factors but I think we all acknowledge the second factor which I could talk about but I don't think is likely to Derive the result here one way or the other if it's neutral or favors The plaintiffs, although we certainly think that these are classic works of scholarship that if any factual works deserve To be treated as you know, evaluative and creative and all to these putting those to one side I really feel that the balance of this case is How do you weigh the educational purpose of the use against the risk of market substitution when you read what the district? Pardon me. The prior panel had to say about factor three in a sense. It said factor three is just a proxy for that They called it a heuristic for the fourth factor. I don't necessarily disagree with what you've just said. Yeah, my concern is about How you? Evaluate the meaning of factor four. Yeah, that's all. Yes There I think your honors. I would ask you to really study carefully The sections of our briefing that lay out what we think is the completely settled jurisprudential test It's a test of presumptive harm Once it's been established That there is a existing Marketplace that functions well, which is in fact accessed by in this case academic publishers Let's go back to judge Martin's question, I just want to follow up. Thank you Was your answer to my question she Was not allowed to re-evaluate the facts in in arriving at her answer on factor four for some works But she could but she had to for others. Is that what we were urging was that clearly Clearly we thought her bottom-line conclusion as to the works for which there was Found to be digital availability in 2009 and my clients keep reminding me not to concede that there wasn't but that were found to be We didn't ask her to re-evaluate we did want on the remand to reopen the record. You're on as you did Demonstrate that as to the other seven as to others The other 17 and see part of that that that is to me part of the problem that you have You want to be able to reopen the record you wanted to reopen and you're asking us to say that you should have been Able to reopen the record to the ones that were against you but you shouldn't have been able to read open the record as to the ones that were for you and and and I look at this and I look at the prior panel opinion in it and I don't see where there's anything to suggest That there should have been a reopening of anything with respect to any of them Factor four and if that's true that then you lose on the reopening of the record as to the ones whether there had been a Determination of fair use on factor four, but the district court it that would seem to be heard in re in in its Re-evaluation of the factor for all the others and your honor if you would pose that as a question to me this morning Which is what if we were to hypothetically my answer to you was would be content with that ruling because the purpose of this case Was never to determine how many? Works infringed. This was a policy a GSU policy that the district court herself found Encouraged or certainly didn't preterm it this kind of infringing conduct where this court to determine as to the 31 works that the district court erred in Flipping and in overall balancing and not concluding that there was infringement as to those works Then it seems to me you're in a position a to make that ruling on the current record No fact-finding needed and be to remand to the district court for what we've always sought. It's not damages sovereign immunity It's all about future conduct regulation through an appropriately framed injunction We will have accomplished our clients will have accomplished their objective if you were even asked to those 31 works Well, let's let's talk about it. Let's let's say that we thought that the district court heard and the Affair was not in refusing to reopen the record. The district court did not abuse its discretion on that Okay but in re but in Essentially reopening the record not to take new evidence, but to revisit the findings about factor for that that was contrary to what the panel opinion Contemplated if that were if that was legal error And the district court needs to revisit Only the way to gives factor for not what the findings were from the original Trial What what would we tell the district court or should we tell if anything the district court about what an Injunction would look like that's not a follow the law injunction. You know, that's not going to be a Just do it right way these four factors. I mean That's one of the problems That I have I hate I hate balancing test They're antithetical to the rule of law, I know I have to use one here, but that's what it is Take your question two parts. If I may if I understood you you said that Contemplating the possibility that this panel might remain to rebalance or reweigh in light of giving more weight or fixing Factor for I would suggest you don't need to remand for that purpose. You have all the fact. I know you do But let's say let's say I don't want to do that If you don't do that, but I mean even even even Strongly, but hopefully strongly hint as to the proper outcome Even if you took even if I were gonna it if we were going to do it You'd have to tell me what the injunction would apply your honor The we framed an injunction early on with enormous input from our clients trying to be thoughtful and again I want to bring back to the context in which this is occurring These works were stitched together with as many as 30 or more other Unlicensed works to create electronic course packs. So there's two components to what we believe an injunction should provide in informing future fair use decisions by faculty One is there should be some some limit At least with general reference to for example The classroom copying guidelines about just physically how much material can be taken From a plaintiff's work without permission. Are we hide bound to a thousand words or 10% whichever is less? Which is the guidelines of course not but the record shows here takings anywhere from five to a hundred times Those guidelines, which was exactly the kind of warning signal that set off lights in the Princeton University case Saying wait a minute. That just can't be what Congress envisioned about this balance between educational copying and others There has to be some quantitative limit and we suggested and would maintain There should be a cumulative test by which I mean not more than X takings put together in any one course in Any one term our clients also believe that there's extra harm to their markets When the same material is used term after term after term by the same professors in the same courses once perhaps a little more leeway multiple times Really significant market incursion third and last your honor The record shows a haphazard implementation of the existing policy. Most faculty were given a fair use checklist Which was a disaster candidly given no training They were offered training, but the record shows a majority either didn't take it or didn't know about it They had not a clue how to fill it out. There needs to be Communication there needs to be education coupled with some level of Administrative overview more than the so-called red flag review, which the Dean of Libraries miss Siemens conceded Was only if somebody literally wanted to copy the whole work. That's not meaningful guidance That's the kind of structure we would propose should be put in place. Okay Thank you very much. Thank you You've saved your five minutes But Mr. Skitzel, you're going to have extra time as well as you need to know and We'll go ahead and give you an extra 14 minutes So it'll be 44 Thank You miss Arbor may it please the court. My name is Steve Schatzel and we represent the Apple ease If I may judge prior I'd like to start with your question about revisit And I would start by reading this language from the prior panel opinion, which is found in my copy of page 1283 Well, do you have you don't have the slip opinion? Do you I'm sorry. I did not but this is you have a section e section e of which section Capital e The in some we hold where it begins. Hold on. Let me try to find that. Okay, I apologize It's I think this is what I should not have the end of that slip of Indian I should have gotten the Westlaw version, but I don't know the West version Okay. All right Yeah, great, yeah Hold the district court did not err in performing a work-by-work analysis and it carries on however The district court did err by giving each of the four fair use factors equal weight and by treating the four factors mechanistically Here's the language. I would refer to the district court should have undertaken a holistic analysis Which carefully balanced the four factors in the manner we have explained That was the direction to judge Evans. All right, and then and then let's keep going You got a paragraph that talks about the first factor then and the second factor then a fact a paragraph That talks about the third factor and then it says this With regard to the fourth factor the effect of defendants use on the market for the original the district court did not err however because defendants unpaid copying was Non-transformative and they use plainness works for one of the purposes for which they are marketed the threat of market substitution is Insevere therefore the district court should have afforded the fourth factor use factor more significant weight in its overall fair use analysis, I Don't see where the district court was ever told Anywhere in this opinion to revisit on a work-by-work basis the Fourth-factor the only thing I see is a determination that there was no error in its work-by-work analysis of the fourth factor that But but it should have been afforded more weight and I look at what the district court did we have a String of findings on the fourth factor in the first go-around where the district court said that was strongly Infringing what did what the defendants were doing? We say no error But give it more weight and on remand that district court instead revisits every one of those and and they Disproportionally almost overwhelmingly now say fair use where where did the panel tell it to do that? Can you show me that? I believe that I have shown up and let me try to explain our position Okay And our response to that would be because the prior panel told her that she had to give it more weight The question becomes how much more weight? The appellants say oh we could jump straight to 40% That's not what judge Evans did she explains at her slip opinion very clearly at paragraph or on pages 13 and 14 That she did this in two stages. She first looked at the individual factors and She did say that yes, I'm using she called them estimated approximate initial weights but then Consistent with the language on which we rely. She did the second stage of the analysis, which I understand to be judge Martin's question the mix she did the entire mix again because she had to do the holistic weighing of the factors and That's the way that's waiting of the factors. That's not a Revisiting of the work-by-work analysis for whether the fourth factor favors Infringement or fair use for each work Well to your Disdain, if you will your honor for balancing tests, unfortunately in the fair use Environment as Mr. Rich said when he opened his argument This is a flexible factual inquiry Yes, and what you didn't wear the district court did not err on the fourth factor. We said didn't hurt Where do we say? Oh, by the way, you didn't know her on this go back and not only revisit it But come out with the exact opposite conclusion on the fourth factor How do I read anything in the panel opinion that tells tell me that's what would happen. I apologize. Yes, sir In order to determine how much more to weigh the fourth factor in for a given work The district court appropriately went back to the evidence for that work to say here's how much more weight I'm going to give it in the final mix I have to first decide how much more weight is it going to be given in her language? She says there may be certain factors or certain features from one work to another that I how does it heart? So, how does this happen death? How how is it? We'll take Just work number one. What was it? Craft of inquiry where there was a determination that it was strong Strongly infringing on the fourth factor. How is it that giving that? more weight Leads now to a finding on the fourth factor alone of fair use There's no error about it It leads to that determination Because on the evidence considered by judge Evans for all the fourth factor evidence on that work including for example Permissions revenue or in the case of other works the lack of any licensing or any permissions Was there a market for it there? There was there was from the permissions were available for that work, right? I'm sorry Your chart is organized differently from mine. My first work is not the same as yours. So I well That's why I named it work Craft of inquiry the craft. It's an Oxford. That's Oxford's the publisher It's on pages 23 and 24 of the district court's opinion Or take handbook of feminist research Or take handbook of social theory all of these are Our works where the district court had found that the initial go-around that the factor for The factor for determination was strongly infringing and and we said no error work by work analysis no error But you didn't give it enough weight And and the threat of market substitution here is severe How is it that when you want go back on remand the district court when it's told that factor for for that those those three works was What which had been strongly infringing is now fair use and we're going to give it more weight as fair use How did the panel tell that in your honor? We submit that the answer to that question is That The district court had a difficult task it had to determine how much more weight Whether it's craft of inquiry or any other works how much more weight to give the fourth factor In order to make that determination the prior panel said for example as was read in close cases It's appropriate in the fourth factor to look at licensing revenues as part of the evidence it therefore also appropriate and there had been some that were that were On the first go-around that the district court had a defense identified as close cases but But not those on the fourth factor But Still in order to make the determination for craft of inquiry focus on that work of how much more weight to give it It was appropriate for the district court to go back and look at all of the evidence on the fourth factor and so for example in 2006 the total amount of revenues received an electronic course content service permissions from CCC for craft of inquiry was $12 and 36 cents, so It might seem unusual to suggest that the $14 and 89 cents that your client Would have had to have paid would have made a substantial impact if everybody was doing it because in reality There's only $12 and 36 cents when you look at what the total amount of revenues was for that year Is that is that what she did? I believe that that's what she did. Yes I believe that that's what the district court did and if that's what she did why isn't that error because it seems to me that the premise of the panel opinion is that If you look at it just that way and that kind of microscopic way you're losing sight of the harm to the future The threat of what if everybody does it and Suddenly a different world where what was 14 or $12 before if everybody's doing it It because the threat of market substitution is severe Why you should be giving it additional weight Now What happened before is never going to be the way it's done it in the future Everybody's going to do what Georgia State does and They've lost it all We respectfully disagree your honor because What judge Evans did was to answer what the prior panel? identified for her as the central question of fair use and that was first it was an evidentiary factor and second the central question was described to her as whether or not there was Georgia State's use if widespread caused Significant. I'm sorry substantial economic harm Such substantial economic harm that it would impair the publishers incentive to publish the work That comes directly from the panel opinion and Those are the questions that she was required to answer and in order to address those questions But the question can't be that they would not have published the work at all Well, clearly they've already published the work. The question is right and that's why The the sense of is it speculative or do we have to really look forward? You know, if you have markets that the courts have recognized separate markets for trailers as and movies You know the trailer is Created from the movie, but the courts have said that's a separate market, right? And and we just we're not going to just allow you to start copying The trailers and this is that this market for excerpts and how it evolves in the future which requires some speculation is not the same necessarily as The market for the work itself the original collected book, right? and and if you allow Georgia State to do this, I guess I understood what the first panel was saying was the threat of market substitution For excerpts going forward where they're already licenses available is severe You didn't get that enough weight, but I don't see where in in that The district court could come back and say oh, yeah, I'm going to look at all that I'm gonna give it more weight and by the way now, it's fair use Because it didn't really harm anybody with this $14 a few years ago, but I Understand your honor's Position to question whether or not it would be appropriate Under these circumstances for the district court to go back and look at the evidence in order to come to the determination required by the prior panel of What the appropriate weight would be be it for the fourth factor the third factor or the second way? Yes, but but whether it's an infringing or fair use is Under that factor is not wait well, but the weight plays into that ultimate determination and That's an ultimate determination that we said had already contained to no error Well, no, then the district court did on remand comes to the exact opposite finding about that factor that we had said no was no error and then gives it more weight because when the district court looked at The evidence before it it found that there was no Substantial economic harm that was going to impair In the past which is a different inquiry the threat of the threat of Market harm this net non transformative work market substitution the threat. That's a forward-looking a future-looking thing It's not just a static thing about what happened in the past Is it but the threat of looking forward is contemplated in that standard your honor? the language from this from the prior panel from this court was Severe we said that it was severe the threats of fear agreed and and also said that The question the central question is whether defendants use Taking into account the damage that might occur if everybody did it. That's the looking forward part. Yeah would cause substantial economic harm Such that allowing it would frustrate the purposes of copyright by materially impairing defendants incentive to publish the work In order to answer that central question he got works we got works were licensed electronic licenses are available, right? I'm sorry We have works all these works where there had been previous determinations of strongly infringing where life Electronic licenses were available, right? I don't know that they're trying to be strongly true, but there are licenses available for certain works Yes, sir. I'll go through every one of them where they were the district court set on first go around it strongly infringing. Okay taking Accept my word on that And the fact that Georgia State did something different in an existing market Where there were licenses available and and they were being purchased electronic licenses That Georgia State does something different and and and Now going forward because what Georgia State did didn't cause substantial economic harm. No problem here No problem here. What's that going to do for the market for everyone back then? Who wasn't doing it the way Georgia State was doing it? Who's what are they going to do tomorrow? Isn't everybody who's been taking advantage of the elect of the electronic license market gonna say? No need for that I'm gonna do what Georgia State's good does To two points in response your honor first. It is always difficult to speculate about a market going forward in The Betamax case the Sony versus universal case many of the same arguments were made that if we allow people to time shift to watch television programs at a Later date because they can put the tape in the machine and tape it that's going to destroy the market Instead it grew markets. It grew new markets in Blockbusters, it's now the streaming markets that mr. Rich mentions. We can watch old TV shows by going on to Netflix I don't know. I pay for Netflix though. Yeah, that's the difference Georgia State's not paying for what it's doing and Georgia State's not who's gonna who's gonna pay for Georgia State way. Well, but the Georgia State way your honor is first and foremost a nonprofit educational institution Which is very different and these are works that are created for educational purposes well, but then they've assumed the risk of moving into the market that they've Wait a minute. They've assumed the rest. I want to make sure I understand it They've assumed the rest that because they create works that are for educational purposes That people who are engaged in education will just steal them No, they've assumed the risk of how fair use is practiced in the educational environment I mean there has to be some kind of balancing here and there have it has to be the case that there are going to be infringements and that The publishers have to be paid under certain circumstances that has to be the case but the mere fact that Licensing is available. It seems to me anyway shouldn't dictate whether or not There is an infringement, which is essentially what I understand the position to be of the other side and so I'm not necessarily saying that You know that your client is without any kind of infringement fault But I guess I wonder what you make this out to be from The panel's opinion the first time around it says we note that it is not determinative Determinative that programs exist through which universities may license excerpts of plaintiffs works in other words the fact that plaintiffs have made paying easier does not automatically dictate a right to payment a Copyright holder can always assert some degree of adverse effect on its potential licensing revenues as a consequence of the secondary use at issue Simply because the copyright holder has not been paid a fee to permit that particular use The goal of copyright is to stimulate the creation of new works not to furnish copyright holders with control over all market Accordingly the ability to license does not demand a finding against fair use What do you make of that? How does that factor into the fourth factor when it's discussed by the panel under the fourth factor? In Response to that question and your earlier question judge over We do believe that something more has to be proven Other than just saying we offer a license So therefore we prevail on the fourth factor and the fourth factor is as mr Rich said this positive and that's the end of the fair use inquiry because if there isn't something more then People in the position of using the work as Georgia State is Have no right to make a fair use determination and that is our statutory, right? second of all, what what we make of the language that you read and the earlier language to which you refer is that What the something more needs to be gets back to the language of have they demonstrated that there will be in fact an Impairment to their incentive to publish what evidence have they come forward with that says? There will be some sort of an impairment probably has to be more than that, right? I mean there probably has to be more than that. But but when you look at the market if if Literally the entirety of royalties the entirety of licensing fees in the world for a work is twelve dollars and eighty nine cents Perhaps that should figure into whether there is truly a market for that particular Excerpt it. Is that what you understand this to mean? That's what we understand judge Evans to have a part of the calculus that she went through first in order to wait the fourth factor appropriately and then to provide or to To complete the holistic analysis that she was required to do because in that situation it would seem that it would not have a market Is that basically what we would have to look at yes, we believe that again as that language states would Gsu's use if widespread looking forward would cause substantial economic harm such that allowing it would frustrate the purposes of copyright by materially impairing defendants incentive to publish the work and To address those fact findings our position is that it was appropriate for judge Evans to Go back through all of the evidence including permissions evidence including Then the district court should have reopened the record and allowed them to submit information about license availability That they hadn't presented before well We respectfully disagree with that because that is within the court's discretion in terms of how it's going to conduct the conduct the trial So it won't won't allow any new evidence if it might favor the plaintiffs It's not a question of whether or not the evidence phasers the plaintiffs or one other party. We would See what the other matter of revisiting making sure you get it, right? I wouldn't why wouldn't it be an abuse of discretion not to allow them to do that? gonna be Relooking at all of it Anyway, because they are the ones who raised the licensing as a potential harm came forward with evidence of licensing And now but now the district court wants to say Wants to say that. Oh, you got a paltry amount of revenue for that kind of licensing and they can't even show the other licensing Availability that they have for other works You've frozen in time to a single year or two The licensing revenue that they they derive for some works And and you want to say? Nothing there, but but if they want to be able to show there actually is more And in this emerging market, no, no, I don't want to hear about that Well, but they're asking to show it after they had the opportunity to produce it at trial It's not that we haven't had the trial. It's not that we haven't had one appeal already They're asking to do it having evidently elected our heads. I went tells you lose quality to this proceeding It's surprising to me that after reading the panel opinion and the way the panel opinion identified the errors of the district court that we could Possibly on remand end up with a finding of fair use as to all the same works as before plus one I've kind of shared just prior frustration and I think probably judge Evans was Frustrated to I mean, but there is a difference between The Court of Appeals saying this is the rule of law you have to apply And she doesn't have any discretion about that and and then her decision about What evidence she's going to consider in applying that rule on remand and she it's you know It's it's with her in her discretion about whether to open the open the record reopen the record or not I mean, so I mean, I think it has a bad result, but I think that's how it happened She doesn't have any choice in What rule of law she applies but she does have a choice about the record I mean, she has a lot of discretion about about that. And I mean, I'm not Sure, I wouldn't I mean, I think I might have done it differently I think I probably would have reopened the record, but I don't I don't know what we can do to her about that I'm not sure. I understand your question. Well, I mean it's more to judge prior than to you I don't disagree with any of that but um Sorry a remarkable way this turned out If I may your honor, I'd like to address your judge prior's question about The perception that somehow we're getting something now for free that we paid for in the past first the prior panel also heard that argument from the publishers and discounted it at footnote four in the prior panel's discussion This court said that It would discount that because there could be many reasons for why Georgia State did not pay for course tax, so We believe that that issue has been addressed and wasn't talking about that. I'm sorry. I wasn't talking about the course facts. I Mean, okay. I'm sorry then. I don't know how effective footnote for response to anything I I'm not understanding the point you're making about about footnote for in response to what we've been discussing Perhaps I just misunderstood your honor's point what I understood you to say we were doing differently was that It was in response to mr. Rich's argument that we paid fees for course packs, but when we make fair use of We were willing to pay for the hot boy that was it went into that determination I thought a Factor for where the district court on the first go-round had said that there were strongly infringing determinations as to work by work For what how many ever it was 30 some odd works And it was not just a matter of course packs. It's also license availability It's a lot of things that the district court was considering for which we said no error. That's right you just didn't give it enough weight and And then on remand the district court Gives it more weight, but revisit all those those All that evidence that was previously available and now arrives at the complete opposite conclusion about it and says now I'm going to give it more weight That I don't understand how You get that outcome from what the panel opinion said And your honor again, I don't mean to repeat myself But in order to determine how much more weight to give it Our position is that the district court appropriately looked at the evidence before it to make that determination on factor for In terms of the course packs versus Digital fair use the point that we would like to make to the court is to that we view the publishers Efforts here as being one that they want to try and expand the scope of their copyright That they in effect want to begin to generate a windfall There is a difference in how course packs were treated and how electronic materials were treated Course packs as a student. I might go and buy one and then I have the physical item My classmate however may not buy one The money that I pay for one generates a fee for the publishers The publishers get no revenue from my classmate because my classmate didn't purchase one You mean that there are students who don't read the material that professors assign? In fact the evidence in this case is that there are so many of them that that that's one reason the court found diminutiveness the minimus infringement in several instances As to those students who do not Buy the course pack the same can be thought to happen in a digital environment Some students may access the work. They get the link and go and read it other students will not do so But in terms of the publishers remedy for that what they propose in their briefing is for example that they would get three dollars and 75 Cents a student if there are a hundred students in the class, they get roughly four dollars for each student and they'd make the point Well, what's what's the harm to Georgia State? We pay a hundred dollars activity fee for a football game or so on and so forth The difference there is that they've now found a way to expand their copyright so that instead of being concerned about use of the material and Obtaining a fee from the person who actually bought the course pack or even used the material Electronically well is now to get three dollars and seventy five cents from a person who does not ever access the material and We know the answer to that would be that what Georgia State ought to do is make fewer course packs Available because so few of their students that will actually buy them and read them but and and don't There's no reason for Georgia State to use a digital license Because for something their students aren't going to read but it doesn't mean that that that the threat of Making it available Digitally isn't a threat of severe harm. It's not it's not that it's not infringing it's just that market reality is that you this wiser decision for you is because only Five percent of your students read the materials just make it available in digital course facts But there is no digital course back your honor we would contest that characterization I mean, well, you know, you can make it available in a course back. I shouldn't have called it a digital course back The That well the purpose that Georgia State has is to identify proper fair uses because under the law a proper fair use is Properly not Generating a fee to anyone and the purpose of fair use is to facilitate teaching and That is what Georgia State is in the business of doing they're trying to fulfill that teaching mission in fact The fair use statute says notwithstanding the provisions of sections 106 and 106 a the fair use of a copyrighted work Including such use by reproduction and copies or phono records or by any other means specified by that section For purposes such as teaching including multiple copies for classroom use is not an infringement of copyright That's what it says, right? Would you agree that that anticipates that at least in some situations? There are uses by educational institutions of these materials even where there is licensing available for these materials that does not constitute a copyright infringement Yes, of course So that being the case it cannot possibly be that Whether or not a copyright is infringed by a fair use or by a proposed fair use Depends on whether or not there's licensing availability. Would you agree? Yes, the mere fact that a license is available, of course It's arise doesn't dictate the outcome But if you didn't copy entire chapters and substantial portions of works that were created for an academic market for a teaching market That's where the threat of market substitution is severe. Then we have a different problem, right? I Do not believe that that is a different problem your honor Two points first of all the panel opinion said that it was Well, I believe the panel opinion for example in reference to what is done in the marketplace referenced the CCC guidelines and those guidelines stated something through the effect of experts in the field Recommend copying no more than one chapter for educational use That's what happens in the real marketplace That's the use that is traditionally made that does not create an act of infringement. That is a fair use But it's going to what judge prior said I mean I think judge prior raises a fair point which is you know if you're talking about more than a Or you're talking about You know at the use of the heart of the matter those are factors that go into the analysis as well and they may affect the total weighing if also licensing is available and that licensing Availability shows that there is a substantial market by virtue of the fact that there have been prior Licensing fees paid that are substantial I mean you would agree that in those circumstances you would have to figure all of that in and probably there would be an infringement. I Would certainly agree that you would have to figure all of that in as you say your honor whether or not there would be an infringement Would require the holistic weighing of all the factors. For example, they want to disregard factor to The prior panel said well, it's not entitled to a lot of weight, but it is entitled to some weight Is it a purely factual work is it something that is not creative or does it have evaluative considerations from the author in The you have to perform the entire four-factor analysis and that would be required So I can't agree that it would probably be an infringement as you say But I can certainly agree that those types of things would be considered and that at some point in time If you use too much of the work Yes, that no longer is a fair use and the publisher deserves to be compensated But as the prior panel said factor three can serve as a heuristic in that regard if you take too much You're going to potentially impact the panels or impact the market for the work Professors are at a unique position here publish or perish is a Line frequently used for professors to survive in the academic environment Environment, excuse me They understand that once they publish and in fact They hope that their work will be used by others to advance their particular field. That's how they are If you will compensate it, it's not necessarily financial. That's how they advance their careers When they teach they also understand that they are using someone else's work They understand they're building on that work, right? They're building on that. That's all true but in publish or perish though is built on an Expectation that there are going to be publishers available to publish your work And that's that's the problem here, right the publishers Who publish the scholars work are saying? We're not going to be able to survive and do that All right, this is going to be substantial harm to us going forward if this is the way it's going to come work. We're Digital use for which there's no fees paid is the future What evidence Was there before judge Evans of that fact? There was no Expert evidence that said this was going to destroy the markets for our work. There was no testimony Where for whether it's awakening minds or any other work that said as a result of Georgia State's use Here are other schools that have started to use it or here other schools. They have refused to pay permissions What evidence was before her on that regard? The only thing they come with is this common-sense notion that oh simply because we offer a license That's the evidence. That's the end of the inquiry No what that does is first it takes us into the circular nature of the licensing exercise that simply by creating a licensing opportunity they prevail on factor four and second of all it It fails to recognize that what does happen here is that as a result of being exposed to an excerpt Perhaps a chapter judge prior that that student then says I'm interested in that subject matter I decide to take that on as my life calling and I work in it I now go and buy the book so that I can have it Is it not fair to say that when the panel said though that that? Circularity problem with respect to factor four that was something that the panel was saying in response to an argument from them From your adversaries, but the district court had heard on Factor four, isn't that right? And they said the panel is saying no, you're not right about that There's no error here and there's a circularity to your argument publishers And then once that isn't that what the prior panel opinion is saying I believe that is a part of what the prior panel is saying. I believe it's not saying though That when you go back we want you to redo it again and Part of what you did district court was circular It's not saying that is it? Well, they're in different parts of the opinion if there's your time what the what the court says your honor is that in addressing generally the fourth factor that the central question is Whether or not Georgia State's use would cause substantial economic harm the central question in relation to the fourth factor The court then comes to the conclusion that it agrees with the district court that the small excerpts defendants used. I Do not substitute for the full books from which they were drawn. So in terms of What the court was trying to address last time yes, I believe it was being responsive to That it's a plaintiff's argument I believe it was also saying a more general admonition that we can't allow Them to head off a defense of fair use Simply by saying well, we've created a licensing opportunity Because that eradicates our ability the panel opinion said there's nothing in the panel opinion that suggests That the district court had done that in the first go-round, isn't there? The court had equated the availability of a life of electronic license or digital license with a finding in favor of the plaintiffs on Factor four that's not it. I mean nothing the panel is saying is that is it I Don't see where the district court in any I mean where the panel in any way faulted how the district court had Evaluated the fourth factor except the weight that it gave it. I think what the panel said was that weight was not Appropriate that it needed to be way more and the reason is because the threat of market substitution is severe Is that right? That was one of the reasons. Yes, sir What any reason was there because it was non-transformative under the first factor. All right All right, and having been performed that I believe that the court said that the district court needed to then Conduct a holistic analysis of all the factors all four factors, right? Yes And so in order to perform those the district court properly as this court had previously said it was appropriate looked at licensing revenue But didn't the district court itself actually implicitly acknowledged that it had decided initially on the 3-1 In the original version where it had found three factors in favor of fair use and one in favor of infringing That it had initially looked at only the licensing availability didn't it implicitly say that in its second opinion where it went through on a case by case basis for each specific work and talked about first whether there was Licensing availability second how much it cost in this case for the craft of inquiry How much it cost Oxford that? GSU didn't pay for that licensing availability And then if everybody had programs that of course, there would be substantial damage and then it said viewed alone These considerations initially caused factor four to weigh in Oxford's favor and then it goes on from there and says nonetheless Defendants claim there was no substantial actual or potential damage to Oxford stemming from widespread use blah blah blah blah blah And it goes into the other the other Considerations. So in other words didn't the district court effectively Acknowledge that the first time around it Considered as a proxy for the fourth factor at least in the 3-1 cases whether there was licensing availability I Don't know that the district court ever Considered licensing availability simply as a proxy for the fourth factor I guess I'm asking you if that's effectively what they did when they said when the district court said First we look to see whether licensing is available. It is available in the case of craft of inquiry Therefore we look to see how much Oxford would have made had GSU paid They would have made $14.89 and then we look to see well if everybody did this Would that have a substantial effect? And of course it would because anytime you multiply any number even if it's only one cent by everybody doing it There's going to be a substantial effect Isn't that effectively? Saying isn't that effectively using The availability of licensing then as a proxy for the fourth factor It is using it as one of the elements to be considered under the fourth factor But the district court for example was also influenced by the fact that there was no evidence of any lost book sales That there was no right. That's what it looked at further though, right? that's what it looked at the second time around when that's why the And the things changed from strongly infringing or friendly questions, by the way, if you're not getting that I Mean do you disagree if you do? And I don't disagree what I'm trying to make certain is apparent is that there were other factors involved in the fourth factor Analysis, there's other evidence there and it's our position that the district court Properly could go back and look at all of that evidence Could the district court say, you know, I was in error on the fourth factor. I Mean, isn't that the effect of what judge Rosenbaum's asking? You know, I actually used to like to the availability of digital licenses as a proxy and that is error After the after the panel had said there was no error on factor four Our position would be that What the district court was doing was complying with the court's directive to properly weigh the fourth factor and to then conduct the holistic analysis This is a friendly question You know, so I I mean just prior is right over and over and over and over just Joe flats opinion says No error on the fourth factor over and over it says that but I think at the same time The opinion does tell judge Evans that she's got to redo it. I mean, for example We're just just like talks about She considered to additional purportedly non statutory considerations And he says what those are and he says she should have included those in the four factors And so that required her to kind of read redo it as well Right. I mean if that's what we've got to figure out, you know Did she did she? Error by looking Back into the evidence on each one of these works for factor four. I mean that that would be one reason why she might do that we would agree with that and Given that she had to if you will redo the soup of fair use That she had to look back at all of the ingredients a little bit differently She was told to redo that analysis in a holistic fashion It's and what the publishers, you know This I'll let you judge yourself whether this is a friendly question I but I wanted to hear hear the rest of your I wanted to hear your answer to that if you had more No, I'm sorry. I thought my time has expired. Oh, yeah Yeah so I This Again, I'll let you judge whether this is a friendly question, right? So on attorney's leave Judge Evans Talked about the fact. I mean she would she considered apparently the fact that These plaintiffs were recruited And I did not see any Consideration that she gave To the John Wiley case from 2016 if I I'm not finding my notes It talks about so we're clearly struggling with with this and You know how to formulate a rule that works for the ages which would indicate to me that the plaintiff's position was reasonable and it serves a social purpose and the Supreme Court has said when you're Addressing attorney's fees. You've got to think about those things and I don't think she did So I wanted to give you a chance to defend what she did. I Think the order that we would first direct you to is found at docket 441 which she did address the various reasons why she found GSU to be the prevailing party for example She did say that in reference to the fair use determination and their Argument that fair you should be very narrowly construed that that position was objectively reasonable But at no time did the district court say that it was appropriate to accuse a party of thousands of violations Then when it came down to identifying some for trial Identify only 99 after a tortured process of trying to identify what was actually in dispute and Then fail to go forward with any evidence whatsoever on a fourth of those allegations Fail to make a prima facie case on another fourth of those allegations and that that was all objectively reasonable The Kurt sang case which I believe is the case you're referring to the John Wiley case Does talk about looking to see if the losing parties position is objectively reasonable, but it doesn't Ignore or say you shouldn't look at the traditional fogarty factors to determine whether or not a Party is the prevailing party. So for example issues such as compensation and deterrence Our position is that this plaintiff was overly aggressive in its identification of works That it was difficult for us to learn what works we were being accused of Infringing and that they didn't narrow there in a timely fashion That it was not fair to drop a quarter of your allegations During trial when we're trying to defend against all of them and that that type of conduct Is worthy of deterrence. Those are the types of facts that Judge Evans looked at and again, I believe the docket number is docket 441 where she looked in more detail at those issues. Thank you Thank you, mr sexual Shuffle, right, right If I may have a couple of minutes to close then you're you can have a minute The last time we were before this panel or before the 11th circuit We told the prior panel that what the publishers feared is not that professors at Georgia State will make incorrect fair use decisions What they fear is that they will make correct fair use decisions It's now apparent that that fear is so strong that what they want to preclude is Preclude us from being able to make a fair use determination that by simply offering a license There will be a negative impact to a market albeit undefined That so impairs their incentive to publish that we have to pay that's not the law of fair use as The prior panel stated the copyright the right to control copying is not absolute it can be conceptually thought of as an implied license an implied license that we use in order to teach and We present we posit that teaching is a fundamental here that the section of the statute that you read Teaching is the first step. We teach students so then they can criticize comment conduct scholar Fair use is not something bad Fair use is what allows us to teach and what fulfills the Constitution. Okay? Thank you. We have your argument. Mr. Rich I'd like to start By Addressing perhaps more concisely than I did my first time about The zone of Fair use in a case like this, which is troubling one or more your honors and troubled judge Evans understandably I'd like to suggest that the record here supports all of the following propositions which in combination in combination compel a As-to-31 of the works we've argued as in our briefing it should have gone beyond but the 31 would I think suffice To make a terribly important point here. We're dealing. This is all in the record much of it stipulated systematic takings of Significant portions your honor judge prior you substantial before they're interchangeable for this person Of works created specifically for the educational market Where takings are concededly non-transformative Therefore pose a significant risk of market substitution Where this with a volume of those takings exceed the classroom copy guidelines, which judge Rosenbaum? I'll come back to in a moment to one of your prior questions to mr. Schatzel by a factor of five to a hundred times Where these takings were encouraged by a GSU policy that completely delegated unreviewed and unreviewable Fair use discretions to untrained faculty Where it's stipulated there was no budget provided to the faculty to secure permissions So if you're a faculty member think about that you fill out a fair use checklist For getting the biases of the checklist and you say well, I've got two choices I guess I either find these favor fair use or I don't use these materials because there's no fund There's no student activity fee. There's no fund for faculty. There's no department money So in a circumstance where GSU budgeted nothing and where they stipulated they have no quote intent to budget anything in the future where the record demonstrates the express purpose of Encouraging e-res use was to migrate works from paper course tax paid for by GSU through permissions fees To unpaid use quote to save students money unquote Where these you takings were used in conjunction with multiple other works We have takings of anywhere from five to thirty seven or so stitched together into electronic digital Readings for two or three courses. There were no purchases of any kind the entirety of the course reading was e-reserves and Where it has further been established your honors that there exists a readily available efficient Low-priced judge Evans herself in her first opinion said the defendants even concede that CCC has an efficient and reasonable set of practices in place to license these matters And by the way, the record was not you don't pay three dollars and seventy-five cents a student per course To be clear. The record was three dollars and seventy-five cents a student per academic year To have access to more than a million three of these works across all e-res uses quite a bargain. I would suggest and All of those together your honors comprised the basis on which we believe on this record an Injunction is warranted. We're not you don't see these plaintiffs suing Isolated instances of uses you don't see them suing for a single isolated chapter taking out of this context You don't see them suing for takings that that that that are that are not part of The takings any more than publishers sued to establish precedent in the paper course pack setting which was identical The suggestion the suggestion incidentally That we ran from the record and that there were a quote only 99 and it was skinny down We brought this case your honor on 15 sample works. It was all about this collection of activity It was never about a tally of how many particular works Viewed in isolation out of context might qualify for fair use. We never Brought the case with that in mind It was the accumulation of all of these that makes this case that on this record should make this case an easy Decision, I know I say that in quotes because I know it it is not easy in some ways Distinguishes I'd interrupt but I mean don't we have to consider it on a work-by-work basis. Yes But but but but to say that you consider on a work-by-work basis doesn't mean with blinders your honor It means you can still take into account the setting in which these works were taken in which the Determination of the prospect of severe market harm was established. So for example a trial your honor Carol Richmond who is an employee of sage publishing testified that One of the professors I think it was professor Kaufman who was teaching from a lot of sage handbooks of qualitative research That's their specialty field Literally took chunks took a chapter here took a chapter there made a whole course out of it She said we do this for a living at sage We actually will create for the professor Kaufman's of the world customized sage work Textbooks, I even brought one to the closing. Here it is. Look a lot like a paper course back and The point is the harm is there under the prevailing test even on a work basis, but it is Transcendently larger when viewed in the context of the case what I'm suggesting is you can easily it seems to me craft an opinion That doesn't imply because we don't mean to imply that there is no zone of fair use ever For takings and that's why your honor to your question about a proposed injunction if these takings were far closer To the guidelines classroom guidelines. We wouldn't be here if these takings were not part of Anthologic takings we wouldn't be here if they were transformative uses We wouldn't be here. But none of that is the case your honor asked the question about the preamble language in 107 it's critically important to understand that that language says fair uses of for educational purposes, we agree and and and if I may just interrupt you, I'm sorry and Importantly because of the very kind of issue that we're dealing with in the electronic environment Congress worried About this same balance and that's why Congress encouraged what became the classroom guidelines Not as a litmus test per se not as a measure Page by page or word by word of infringement, but some measure to say you can't have unbounded Educational use you'll have the kind of situation that GSU has done the guidelines therefore provided some guidance My question is not that you can't have uses that aren't fair. Of course you can my question is It seems to me that the mere fact that there is licensing availability Cannot be determinative on this issue because if it is then you can't ever have fair uses That's what my question goes to and and our point is taking your point. That's only we're only saying that it's determinative Where you have already a finding of severe risk of market harm that's what the prior panel itself found a severe on this record a Severe risk of market impairment. They need not have determined that But on this record including an important set of stipulated facts which included the centrality of The fact that this is this is stipulated fact 17 and 52, I believe the fact that the fact that Without that that without permissions income certain works wouldn't be viable in terms of profitability There was a big record here that led the dish that led the circuit court prior panel to conclude We're facing a severe risk of market harm here the problem with what judge Evans did Putting aside whether she felt she had latitude on the record or not judge Martin to do more. The problem is She veered way off of Established precedent here way out of bounds. The test has never been Tell us today if this unlicensed use by this defendant will put you out of business in effect That's what she really said was the test There's no evidence that would put them out of business for this work because it was only $14 and 39 cents with respect. It's not the test. The Sony case says it's only some Likelihood of Potential future harm not quantifiable today by definition half-minute Harper says normal market. Let me use my last half minute on attorneys fees if I may which is critical Which is your honor, we completely agree Kurt saying well, it doesn't say that there's a unitary test for For objective reasonableness. It's the main driver says the Supreme Court We invited judge Evans to consider it. She declined to consider it in her first opinion She acknowledged we acted in quote good faith in her first attorney fee opinion and in her second She acknowledged that we did act objectively reasonable and that we were pursuing legitimate Copyright law objectives what better evidence that this case has been reversed and remanded once before that this is an objectively reasonable case This is they're asking three million dollars in attorneys fees. No matter what seems Unwarranted. Thank you so much for your time. Thank you. Mr. Rich. We have your case. We will be in recess until tomorrow morning